IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:24-cv-335-LCB-JLW

| | |
|---|---|
| DISABILITY RIGHTS NORTH CAROLINA,<br><br>        Plaintiff,<br>v.<br><br>THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES and DEVDUTTA SANGVAI, in his official capacity as Secretary of the North Carolina Department of Health and Human Services,<br><br>        Defendants. | **DEFENDANTS' OBJECTIONS TO MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**<br><br>**FED. R. CIV. P. 72** |

On June 12, 2025, United States Magistrate Judge Joe L. Webster issued a *Memorandum Opinion and Recommendation of United States Magistrate Judge* [DE 33] (hereafter, the "M&R"). The M&R addressed Plaintiff's Motion for Preliminary Injunction [DE 15] and Defendants' Motion to Dismiss [DE 22], and made recommendations regarding the disposition of both motions. *Id*., at 58. By Text Order dated June 23, 2025 [DE 35], the Court permitted the parties to file Rule 72 objections not later than July 3, 2025.

Defendants, the North Carolina Department of Health and Human Services and Devdutta Sangvai,[1] in his official capacity as Secretary of the North Carolina Department of Health and Human Services (together, "DHHS"), pursuant to 28 U.S.C. § 636(b), Fed. R. Civ. P. 72 and L.R. 72.4, respectfully submits the following objections to the M&R.

1. Defendants object to the portions of the M&R pertaining to Defendants' Motion to Dismiss for lack of associational standing, including the analysis, conclusion and recommendation that Plaintiff has sufficiently met its burden of alleging associational standing under the first and third *Hunt* requirements. *See* DE 33 at 15-22, and 58.

2. Defendants object to the portions of the M&R pertaining to Defendants' Motion to Dismiss based on indispensable parties, including the analysis, conclusion and recommendation on same. *See* DE 33, at 23-26, and 58.

## NATURE OF THE MATTER

DHHS is the state agency that operates three state psychiatric hospitals ("SPHs") in North Carolina. Working with state and county stakeholders, the SPHs are the exclusive treatment providers for criminal detainees suspected of being "incapable to proceed" ("ITP") by state criminal courts pursuant to the State's ITP statute, N.C.G.S. § 15A-1001 *eq seq.* DE 1, ¶¶ 8, 27, 62. DHHS also has opened one detention-based and three

---

[1] Pursuant to Rule 25(d), DHHS Secretary Devdutta Sangvai is automatically substituted as a party for former DHHS Secretary Kody Kinsley, both of whom were named in their official capacities only.

community-based restoration programs. Cochrane Decl. [DE 20-1], ¶ 9.

At present, it is undisputed that the demand for ITP assessment and restoration treatment exceeds the available supply in North Carolina. Due to factors beyond anyone's control (*i.e.*, rising demand for ITP services, serious nationwide shortage of health care workers) stemming in large part from the COVID-19 pandemic, ITP wait times are a "national crisis," and Plaintiff's expert says North Carolina "is not alone in facing such challenges." *See* Murrie Decl. [DE 15-10] ¶¶ 3.a, 4. In many states, including North Carolina, ITP detainees must be put on waiting lists.

DHHS alone did not cause ITP wait times. Nor can DHHS alone, under its own authority, reduce wait times. The Complaint itself explicitly acknowledges the multiple other state and county stakeholders that play indispensable contributing roles in these issues. For example, county jails provide little to no mental health treatment, although mental health needs in jails are known. DE 1, ¶¶ 11, 52, 73-76, 82. State criminal courts, including judges and clerks, control the scheduling of hearings on capacity issues. *Id.*, ¶¶ 36, 40, 48. Detainees may "remain in jail as they wait for judges to order capacity assessments." *Id.*, ¶ 52; *see also* ¶¶ 73-74 (Superior Court clerks control scheduling for District Court involuntary commitment hearings).

Additionally, nationwide economic forces, also outside of the control of DHHS, have contributed to wait times. *See, e.g., id.*, ¶¶ 9, 63-68 (staffing shortages exacerbated during the COVID-19 pandemic resulted in a reduction in the number of available beds, creating waiting lists and wait times for ITP detainees); *id.* at n.2 (quantifying psychiatric

bed shortages); DE 15-10, ¶¶ 3.a, 4 (demand for capacity evaluations has grown "dramatically").

Plaintiff's expert underscores the allegations in the Complaint that state and county stakeholders must work collaboratively with DHHS to implement effective solutions to reduce ITP wait times. *See* DE 15-10, ¶¶ 23-45. Solutions demand legislative changes, "upstream" deflection and diversion away from the criminal legal system, and "educating courts and attorneys about capacity issues", as this "tends to increase appropriate orders for evaluations [and] decrease inappropriate orders for evaluations." *Id*., ¶¶ 23, 27, 28, 45. DHHS's expert agree that "actions, or lack of actions, taken by external stakeholders substantially impact the entire [ITP] system," including wait times. *See* DE 20-1, ¶¶ 28-37; Brown Decl. [DE 20-2], ¶¶ 7-14.

Despite the limited control that DHHS has over the ITP system, and nationwide economic forces, DHHS is deeply committed to reducing ITP wait times. In close partnership with stakeholders across the State, DHHS already is pursuing effective initiatives to reduce wait times. DE 20-2, ¶¶ 19-28. This includes new funding, *id*., ¶ 21, new funding requests, *id.*, ¶ 27, proposed legislative changes to improve ITP systems, *id*., ¶¶ 23-27, and multiple new programs and initiatives. *Id*., ¶ 22; *see also* DE 20-1, ¶¶ 40-48 (initiatives for restoration in alternative settings outside of hospitals, DHHS-initiated pilot programs). This work shows positive results – wait times and wait lists have been trending down. DHHS expects that wait times will continue to improve.

Against this multiple-stakeholder, multiple causation background, and with

collaborative efforts already under way, Plaintiff Disability Rights North Carolina attempts to invoke this Court's subject matter jurisdiction, through associational standing, to impose liability on DHHS alone for these interconnected issues. DE 1, ¶¶ 5-6, 99-139. Defendants asserted jurisdictional and jurisprudential defenses, all of which shared a common theme: ITP wait times are the function of multiple external factors and independent economic forces. DE 22, 23. These defenses demonstrated the key deficiency with the Complaint: Plaintiff cannot satisfy Article III requirements on injury, causation and redressability, nor can Plaintiff obtain meaningful, effective relief from DHHS alone.

## **LEGAL STANDARD**

On review of a magistrate judge's proposed findings and recommendations in dispositive matters, the district judge must "make a de novo determination of those portions of the ... specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see United States v. De Leon-Ramirez*, 925 F.3d 177, 181 (4th Cir. 2019). The district judge "may accept, reject, or modify" the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see North Carolina A. Philip Randolph Inst. v. North Carolina State Bd. of Elections*, No. 1:20CV876, 2024 WL 1717482, at *2 (M.D.N.C. Apr. 22, 2024).

**DEFENDANTS' OBJECTIONS TO M&R**

1. **Defendants object to the portions of the M&R pertaining to Defendants' Motion to Dismiss for lack of standing, including the analysis and conclusion that Plaintiff has sufficiently met its burden of alleging associational standing.** *See* **DE 33, at 15-21, 21-22, and 58.**

Defendants moved to dismiss the Complaint under Rule 12(b)(1) on the ground (*inter alia*) that Plaintiff lacks associational standing. DE 22; DE 23, at 5, 6-10. The M&R found that Plaintiff had sufficiently alleged associational standing, and recommends that this ground for dismissal be denied. DE, at 15-21, 58. Defendants respectfully object to these findings and this recommended disposition.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up). Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (cleaned up).

Plaintiff does not allege any direct injury to itself, such as a diversion of organizational resources. Rather, Plaintiff asserts standing based on allegations that Plaintiff is designated as the statutorily authorized Protection and Advocacy system

("P&A") for North Carolina, and as such may assert claims "on behalf of ITP detainees in North Caroliana who are detained in county jails for extended periods of time while they await ITP or involuntary commitment examinations and/or treatment …." DE 1, ¶¶ 4, 24; *see also id.* ¶¶ 20-21 (alleging that plaintiff is authorized by statute to "pursue legal remedies for individuals with disabilities").

A non-membership organization like Plaintiff asserting associational standing bears the burden to satisfy the three part test under *Hunt*: that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); DE 33, at 16. *Hunt* thus requires that a non-membership organization has associational standing only "where it possesses the 'indicia of membership'" demonstrating that it operates as a membership organization (similar to the apple growers' commission in *Hunt*). DE 33, at 16 (quoting *Hunt*, 432 U.S. at 343; *see also Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149, 157 (2d Cir. 2012) (non-membership organizations may sue on behalf of its constituents only if they "function effectively as a membership organization") (cleaned up).

In *Hunt*, the Supreme Court found that a state commission representing apple growers had the requisite "indicia of membership" for purposes of organizational standing based on three key factors: (1) the apple growers "alone **elect** the members of the

Commission;(2) they alone may **serve** on the Commission; and (3) they alone **finance** its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344-45 (emphasis added).

### Hunt Factor 1 – "Indicia of Membership" Showing Constituent Control

Plaintiff did not allege it is a membership-based organization, or that its constituents are the equivalent of members who can and do exert control of a voluntary, membership-based organization (as addressed in *Hunt*). Instead, Plaintiff's constituents are disabled individuals in North Carolina, here specifically including individuals who have been charged with a crime, adjudicated ITP, and ordered to receive assessment or competency restoration services. DE 1, ¶ 7. Plaintiff alleges that a majority of its directors "are family members, guardians, or advocates for people with disabilities." DE 1, ¶ 22. Plaintiff also alleges it conducts annual surveys to determine the organization's advocacy focus, and that members of the disability community "have the right to file grievances if they disagree with actions taken DRNC." *Id*.

This falls short of the indicia of control presented in *Hunt*. In contrast with *Hunt*, the Complaint does not allege that DRNC's constituents have ever "elect[ed]" Plaintiff's officers and directors, or "serv[ed]" on Plaintiff's leadership board, or "finance[d] its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344-45. The allegations that family members, guardian and advocates constitute a majority of board members, that Plaintiff conducts annual surveys to determine

direction, and that the disability community may file grievances, DE 1, ¶ 22, are not analogous to the key factors in *Hunt*. They do not show constituent control of the P&A.

The M&R did not properly undertake the "indicia of membership" analysis required by the first prong of *Hunt*. The M&R relied on *Timothy B. v. Kinsley*, No. 1:22-CV-1046, 2024 WL 1350071, at *5-13 (M.D.N.C. Mar. 29, 2024) to find support the first prong of Hunt. However, in *Timothy B.,* there was an individual named plaintiff. DE 33, at 15-16. The *Timothy B*. court undertook a standing analysis for the individual plaintiff and found the allegations adequately demonstrated standing. *Id*. As a result, with no question that one constituent member possessed independent standing to sue, the Court concluded that the associational plaintiff necessarily met the first prong of *Hunt*. The only other case in the 4th Circuit that the court cites to is *Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-CV-361-BO, 2022 WL 2678884, at *2 (E.D.N.C. July 11, 2022). However, in that case, the Court did not appear to undertake a detailed analysis under the first prong of *Hunt* and instead found that "[a]ll voters with disabilities in North Carolina are constituents of DRNC, and this action is brought on behalf of those who need assistance with voting," and cited to the portions of the complaint. *Id*. Defendants respectfully object to this finding in the M&R.[2]

---

[2] The Fourth Circuit has not ruled on whether non-membership P&As have associational standing. The Eighth Circuit and Fifth Circuit have found that P&As do not satisfy the first element of *Hunt* because constituents of these groups lack a sufficiently close relationship to the organization to establish associational standing.

**Hunt Factor 2 – Causation and Redressability**

Nor did the M&R perform a proper analysis of the causation and redressability requirements incorporated in the first *Hunt* test.[3] DE, at 21-22, 58. Defendant respectfully objects to M&R's conclusion that Plaintiff's allegations were "plausible on their face" with respect to traceability and causation. DE 33, at 22.

The causation element of Article III standing demands "a causal connection between the injury [claimed] and the conduct complained of[.]" DE 33, at 21 (quoting *Cooksey v. Futrell,* 721 F.3d 226, 234 (4th Cir. 2013)). A plaintiff does not satisfy the Article III redressability prerequisite without pleading "there is a non-speculative likelihood that the injury would be redressed by a favorable judicial decision." DE 33, at 21 (quoting *Cooksey*, 721 F.3d at 238).

Here, the Complaint alleges, Plaintiff's expert confirms, and the evidence is undisputed, that ITP wait times are affected by multiple external stakeholders and nationwide economic factors, all outside of DHHS control. DE 1, ¶¶ 9, 11, 36, 40, 52, 63-68, 73-76, 82; DE 15-10, ¶¶ 3.a, 4, 23, 27, 28, 45. The Complaint explicitly acknowledged that multiple state and county stakeholders play indispensable contributing roles in ITP wait time issues. *See, e.g.,* DE 1, ¶¶ 11, 36, 40, 52, 73-76, 82 (ITP wait times depend on roles played by county jails; state criminal courts, including judges and clerks); *id.*, ¶ 52

---

[3] The Article III requirements of injury in fact, causal connection to the defendant's conduct, and redressability are encompassed within the first prong of the *Hunt* test. *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555–56 (1996).

(detainees may "remain in jail as they wait for judges to order capacity assessments"); *see also* ¶¶ 73-74 (Superior Court clerks control scheduling for District Court involuntary commitment hearings). Nor can the M&R conclusion and recommendation on standing be squared with Plaintiff's allegations that nationwide economic forces, also outside of the control of DHHS, have contributed to wait times. *See, e.g., id.*, ¶¶ 9, 63-68 (staffing shortages exacerbated during the COVID-19 pandemic resulted in a reduction in the number of available beds, creating waiting lists and wait times for ITP detainees); *id*. at n.2 (quantifying psychiatric bed shortages).

Plaintiff's expert witness testified that ITP wait times are the result of multiple independent stakeholders and nationwide economic forces, which issues cannot be resolved by DHHS acting alone. *See* DE 15-10, ¶¶ 3.a, 4 (demand for capacity evaluations has grown "dramatically"); *id*., ¶¶ 23, 27, 28, 45 (any solution for ITP wait times demands legislative changes, "upstream" deflection and diversion away from the criminal legal system, and "educating courts and attorneys about capacity issues", as this "tends to increase appropriate orders for evaluations [and] decrease inappropriate orders for evaluations").

Based on this record, the M&R correctly concluded "the evidence demonstrates that there may be external factors contributing to the wait times and thereby interfering or perhaps hindering DHHS's statutory obligations" under the ITP statute. DE 33, at 50; *see also* DE 33, at 54 (Defendants' statutory obligations "appear to be subject to some external

factors contributing to wait times"). That directly undermines Plaintiff's theories of causation and redressability regarding ITP wait times.

However, the M&R found that an order enjoining Defendant from failing to provide timely assessments or restoration services, or an order for Defendant to develop a remedial plan, "would provide some 'tangible' benefit to ITP detainees." DE 33, at 22. But that logical leap is unsupported in the record, given that Plaintiff's allegations and evidence show that DHHS alone did not cause ITP wait times, nor can DHHS under its own authority, without collaborative stakeholders, act to reduce wait times.

Against these allegations and this evidence, Plaintiff cannot meet the constitutional imperatives of causation or redressability. Defendants respectfully object to the M&R conclusions to the contrary on standing.

### Hunt Factor 3 – Participation of Individual Constituents Required

Defendant also objects to the M&R finding that the Complaint satisfies the third *Hunt* factor – that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." DE 33, at 18-21; *Hunt*, 432 U.S. at 343.[4]

Without naming any individual plaintiff who has waited for ITP services, Plaintiff through associational standing seeks to establish liability and obtain injunctive relief. But

---

[4] Defendant does not object to the M&R's conclusion that Congress abrogated the "prudential" third requirement of *Hunt*, as applied to P&A entities. DE 33, at 18. Nevertheless, here, the lack of any individual plaintiff with a direct injury relating to a waiting time underscores the deep flaws in Plaintiff's theory of the case.

abstract questions lacking concrete facts cannot be properly adjudicated. This is especially true here, where the record establishes that wait times are affected by many individual factors outside of DHHS control. DE 15-10, ¶ 24 (ITP wait times, and effective efforts to reduce them, require "coordination and collaboration across mental health systems and criminal legal systems"); *id*. at ¶¶ 28-39 (testifying that multiple factors affect individual detainees and their respective wait times); DE 32, at 72-75, 80-82. The record underscores that the claims asserted, and the relief sought, both demand participation from individual, affected plaintiffs.

The M&R did not properly account for the undisputed, multi-factor landscape directly relevant to both the claims asserted and the relief requested. Instead, focusing only on the relief requested, the M&R concluded that Plaintiff satisfies *Hunt* factor 3 because injunctive relief, "as opposed to money damages, generally satisfies the third prong of the *Hunt* test." DE 33, at 19-20 (citing *Timothy B.*, 2024 WL 1350071, at * 12). *But see New Hampshire Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006) (associational representational standing inappropriate if adjudicating the merits of an association's claim requires the court to engage in a fact-intensive-individual inquiry"), *aff'd,* 552 U.S. 364, 12 (2008).

This is not a one-size-fits-all case, where a single cause has affected multiple litigants identically. Plaintiff's expert rebuts that theory. Even the "illustrative examples" alleged in the Complaint show different independent factors affect individual cases differently. DE 1, at ¶¶ 86-98. Nor is there an available "single bullet" remedy by which

an injunction directed to DHHS – and DHHS alone – could possibly resolve each of the many independent factors that singularly or together affect any given individual's wait time. Individual plaintiffs with individual facts are required to establish both causation (*i.e.*, did this person wait because of an issue within the Superior Court system, and/or within the sheriff's department, and/or within the county jail, and/or within the psychiatric hospitals under DHHS control?), and any relief.

Defendants respectfully object to the M&R to the extent that it made conclusions to the contrary. DE 33, at 18-21.

**2. Defendants object to the portions of the M&R pertaining to Defendants' Motion to Dismiss based on indispensable parties, Rule 12(b)(7), including the analysis, conclusion and recommendation on same.** *See* **DE 33, at 23-26, and 58.**

The M&R found that Defendants did not meet their burden under Rules 12(b)(7) and 19(a)(1), and recommended that Defendants' request for dismissal on this basis be denied. DE 33, at 23-26, 58. The M&R's findings, however, cannot be squared with the operative allegations and undisputed evidence on alleged causation and redressability.

The Complaint is both internally inconsistent and conclusory on causation and redressability. *Munger v. United States*, 116 F. Supp. 2d 672, 674 (D. Md. 2000) (courts need not accept as true legal conclusions couched as factual allegations). One the one hand, it alleges that DHHS bears sole responsibility to administer the ITP system. *See* DE 1, ¶¶ 27, 109. Elsewhere, it alleges that wait times arise "in large part" from DHHS's actions. *Id.*, ¶ 75. But, inconsistently, it alleges that non-party state and county stakeholders play

significant contributing roles in these issues. For example, it alleges county jails provide little to no mental health treatment, although mental health needs in jails are known. *Id.*, ¶¶ 11, 52, 73-76, 82. State criminal courts, including judges and clerks, control the scheduling of hearings on capacity issues. *Id.*, ¶¶ 36, 40, 48, 52, 73-74. Plaintiff's expert corroborated the complexity of the system. DE 23 at 4; DE 15-10, ¶¶ 21, 23, 27, 28, 45. DHHS's experts agree. *See* DE 20-1, ¶¶ 28-37.[5]

Despite this record, the M&R found that the absent stakeholders, identified in the Complaint and by Plaintiffs' expert but not named as party-defendants, are not necessary under Rule 19(a). DE 33, at 25-26. To support this conclusion, the M&R cited caselaw holding that plaintiffs generally are not obligated to name joint tortfeasors or co-conspirators as defendants, and "[t]o the extent DRNC 'may not be able to obtain entirely satisfactory relief by suing only [DHHS] and not [the non-party stakeholders], that is a risk it may choose to take." DE 33, at 26 (citation omitted).

Defendants do not take issue with the caselaw cited, but object to the M&R's conclusion about potential redressability. The Complaint requests (*inter alia*) injunctive relief requiring Defendants alone to reduce wait times. *See* DE 1, at 43 (demanding "injunctions enjoining Defendants from failing to provide timely access to capacity

---

[5] That's why DHHS has been working with law enforcement, judges, the North Carolina Administrative Office of the Courts, and various District Attorneys' offices on multiple initiatives to reduce wait times. *Id.*, ¶ 40-49. *See also* DE 20-2, ¶¶ 19-28 (DHHS is committed to reducing wait times and is working with legislators and others on investments in deflection, diversion and other innovative programs). The M&R acknowledged this undisputed evidence. DE 33, at 50-51.

assessment, restoration services, and IVC examinations…."); *id*., at 44 (demanding an order directing Defendants alone to develop a remedial plan to reduce wait times). But such demands fail to properly account for the undisputed operative allegations about the complexities inherent in inter-connected ITP system. Defendants cannot solve these issues alone, nor can they be the guarantors of the independent operations of the various stakeholders that constitute the ITP system. That is the fundamental flaw in Plaintiff's case.

Decisions under Rule 19 "must be made pragmatically, in the context of the substance of each case, rather than by procedural formula." *Owens–Illinois, Inc. v. Meade,* 186 F.3d 435, 440 (4th Cir. 1999). Here, the M&R failed to properly credit Defendants' showing under Rule 19(a)(1) that Defendants in a vacuum, without close cooperation from multiple other stakeholders, cannot provide "complete relief" to Plaintiff that will "effectively and completely adjudicate the dispute" between these parties. *Soho Wilmington LLC v. Barnhill Contr. Co.,* No. 7:18-cv-79-D, 2019 WL 165708, at * 4 (E.D.N.C. Jan. 10, 2019) (cited in M&R, at 25). Therefore, Defendants respectfully object to the contrary finding and recommendation in the M&R. DE 33, at 23-26, 58.

## CONCLUSION

For the reasons demonstrated above, Defendants respectfully submit that the Court should sustain Defendants' objections to the specified portions of the M&R. *See* DE 33 at 15-21 (associational standing), 21-22 (standing, causation, redressability), 23-26 (indispensable parties), and 58 (recommendations on same).

Respectfully submitted this the 3rd day of July 2025.

        JEFF JACKSON
        ATTORNEY GENERAL

        /s/Michael T. Wood
        Michael T. Wood
        Special Deputy Attorney General
        N.C. State Bar No. 32427
        Email: MWood@ncdoj.gov

        Colleen M. Crowley
        Special Deputy Attorney General
        N.C. State Bar No. 25375
        Email: CCrowley@ncdoj.gov

        N.C. Department of Justice
        Post Office Box 629
        Raleigh, NC 27602
        Telephone: 919-716-0186
        Facsimile: 919-716-6758

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies pursuant to Local Rule 72.4 that this document does not exceed 6,250 words or 20 pages in the manner specified in L.R. 7.3(d).

                        JEFF JACKSON
                        ATTORNEY GENERAL

                        /s/ Michael T. Wood
                        Michael T. Wood
                        Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing *DEFENDANTS' OBJECTIONS TO MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE* with the Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record who have registered on the CM/ECF system.

Electronically submitted this the 3rd day of July, 2025.

                        /s/ Michael T. Wood
                        Michael T. Wood
                        Special Deputy Attorney General