DISABILITY RIGHTS NORTH CAROLINA,

        Plaintiff,

v.

THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES and DEVDUTTA SANGVAI, in his official capacity as Secretary of the North Carolina Department of Health And Human Services,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:24-cv-335-WO-JGM

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY CONSIDERATION OF MOTION FOR CLASS CERTIFICATION

Defendants, the North Carolina Department of Health and Human Services and Devdutta Sangvai, in his official capacity as Secretary of the North Carolina Department of Health and Human Services (together, "DHHS"), pursuant to Fed. R. Civ. P. Rules 7(d) and 23(d)(1) and Local Civil Rules 7.3(f) and 23.1(b), submits this memorandum in support of their Motion to Stay Consideration of Motion for Class Certification (Doc. 43.)

As demonstrated below, a stay is appropriate to allow Defendants to take pre-certification discovery necessary for them to properly evaluate the class certification issues raised in the motion. Without a stay, Defendants will suffer unfair prejudice, the Court

will not be presented with a full and adequate record by which to properly evaluate these important class certification issues, and the interests of justice will not be served. In contrast, a stay will not prejudice Plaintiffs.

## Introduction and Nature of this Matter

DHHS is the state agency that operates three state psychiatric hospitals ("SPHs") in North Carolina. N.C.G.S. § 122C-181. Working with state and county stakeholders, the SPHs are the exclusive treatment providers for defendants deemed incapable to proceed ("ITP") by state criminal courts pursuant to the State's ITP statute, N.C.G.S. § 15A-1001. (Doc. 1, ¶¶ 8, 27, 62.)

At present, it is undisputed that the demand for ITP evaluations and restoration services exceeds the available supply in North Carolina. Due to factors beyond Defendants' control, stemming in large part from the COVID-19 pandemic, these waiting times are a "national crisis," and Plaintiffs' expert says North Carolina "is not alone in facing such challenges." (Doc. 15-10, ¶¶ 3.a, 4.) Therefore, in many states, including North Carolina, pretrial detainees are currently on waiting lists for evaluations, and detainees deemed to be incapable to proceed are currently on waiting lists for restoration.

DHHS alone did not cause the wait times for detainees to be evaluated, or the wait times for restoration. Nor can DHHS alone, under its own authority, reduce wait times. The Complaint explicitly acknowledges the multiple other state and county stakeholders that play indispensable contributing roles in these issues. (DE 1, ¶¶ 11, 52, 73-76, 82). State criminal courts, including judges and clerks, control the scheduling of hearings on

2

capacity issues. (*Id*., ¶¶ 36, 40, 48, 52, ¶¶ 73-74.) Nationwide economic forces, also outside of the control of DHHS, have contributed to wait times. (*Id.*, ¶¶ 9, 63-68 (staffing shortages exacerbated during the COVID-19 pandemic resulted in a reduction in the number of available beds); *id*. at n.2 (quantifying psychiatric bed shortages); DE 15-10, ¶¶ 3.a, 4 (demand for capacity evaluations has grown "dramatically").

Plaintiffs' expert testified that state and county stakeholders must work collaboratively with DHHS to implement effective solutions to reduce wait times. (*See* DE 15-10, ¶¶ 23-45.) DHHS's experts agree that "actions, or lack of actions, taken by external stakeholders substantially impact the entire [ITP] system," including wait times. (*See* DE 20-1, ¶¶ 28-37; 20-2, ¶¶ 7-14.)

In close partnership with stakeholders across the State, DHHS already is pursuing effective initiatives to reduce each of these discrete issues. (DE 20-2, ¶¶ 19-28.) This includes new funding, *id*., ¶ 21, new funding requests, *id.*, ¶ 27, proposed legislative changes, *id*., ¶¶ 23-27, and multiple new programs and initiatives. *Id*., ¶ 22; *see also* DE 20-1, ¶¶ 40-48 (). This work shows positive results.

Following an evidentiary hearing, Magistrate Judge Joe L. Webster acknowledged that causation is complex. The evidence "demonstrates that there may be external factors contributing to the wait times and thereby interfering or perhaps hindering NCDHHS's statutory obligations." (Doc. 33, at 50-51.) The Magistrate Judge also recognized that DHHS already "is making efforts to address staffing shortages along with other steps to reduce wait times, which is in part dependent on State legislative appropriations…. While

3

[Plaintiff] DRNC believes the steps being taken are too slow or otherwise insufficient, 'that appears to be a policy difference, not one grounded in the Constitution.'" (*Id.*, at 51, citation omitted).

Against this background, and with collaborative remedial efforts already under way, Plaintiffs filed the motion for class certification, along with a supporting memorandum that incorporates nine factual affidavits and five documentary exhibits (Docs. 43, 44). The motion was filed before this Court granted leave to amend to file a First Amended Complaint with class action allegations, Doc. 41, and before any discovery has been permitted.

As demonstrated below, Defendants respectfully request that the Court stay the motion, including the deadline for Defendants to respond to it, and the Court's consideration of it, until after Defendants pursue the discovery they need on these important Rule 23 issues.

### Legal Standards on Class Certification

A class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiffs seeking class certification "must affirmatively demonstrate [their] compliance" with Federal Rule of Civil Procedure 23. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (the burden is on plaintiffs to demonstrate that the requirements of Rule 23 are satisfied); *see also* Local Rule 23.1(d) ("The burden shall be upon any party seeking to

maintain a case as a class action to present an evidentiary basis to the Court showing that the action is properly maintainable as such"). A district court may, in its discretion, order that an action proceed as a class action only if it finds that the requirements of Federal Rule of Civil Procedure 23 have been satisfied. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *EQT Prod. Co. v. Adair,* 764 F.3d 347, 358 (4th Cir. 2014) (the district court "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied") (citing *Wal–Mart,* 564 U.S. at 351); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2015 WL 1964400, at *6–7 (E.D.N.C. May 1, 2015) (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160–61 (1982)).

As threshold matters, Rule 23(a) requires that a precisely defined class exists, and that the proposed class representatives be "readily identifiable" or "ascertainab[le]" as members of the putative class. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654-55 (4th Cir. 2019). Plaintiffs must then establish that they satisfy all four requirements of Rule 23(a), to ensure that the class claims are fairly encompassed by those of the named plaintiffs. These prerequisites are often referred to as numerosity, commonality, typicality, and adequacy. *Krakauer*, 925 F.3d at 654-55.

### Legal Standards on Pre-certification Discovery

This Court has discretion to order pre-certification discovery. "The purpose of discovery is to provide a mechanism for making relevant information available to the

litigants." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. "Whether or not discovery will be permitted in a case of this nature [a class action] lies within the sound discretion of the trial court." *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 722–23 (D. Md. 2025) (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir. 1977) (citation omitted)). Pre-certification discovery "relating to the issues involved in maintainability" is often permitted. *Doctor v. Seaboard Coast Line R.R.*, 540 F.2d 699, 707 (4th Cir. 1976) (quoting *Huff v. N. D. Cass Co.*, 485 F.2d 710, 713 (5th Cir. 1973) (en banc)).

This Court has recognized that pre-certification discovery can be appropriate, where discovery will allow the parties and Court to properly consider class certification issues. *See, e.g., Williams v. The Estates, LLC*, No. 1:19-CV-1076, 2020 WL 6928327, at *1 (M.D.N.C. June 23, 2020) (Eagles, J.) (denying plaintiffs' motion for class certification without prejudice to renewal after discovery; finding that "detailed class discovery" is appropriate "as it will provide a clearer record on which the Court can conduct the required rigorous analysis before certifying the class"); *Hooker v. Citadel Salisbury LLC,* No. 1:21-CV-00384, 2021 WL 10396902, at *1 (M.D.N.C. July 15, 2021) (Schroeder, J.) (granting defendant's motion to stay briefing on class certification and granting pre-certification discovery).

Other courts in this circuit likewise have allowed pre-certification discovery. *See, e.g., Long v. CPI Sec. Sys., Inc.,* 292 F.R.D. 296, 297–98 (W.D.N.C. 2013) (order granting defendant's motion for enlargement of time to respond to motion for class certification,

and "allowing Defendant to conduct limited discovery on the Named and Opt-in Plaintiffs"); *Boyce v. Wachovia Sec., LLC*, No. 5:09-CV-263-FL, 2010 WL 1253737, at *5 (E.D.N.C. Mar. 29, 2010) (finding "[i]t is seldom, if ever, possible to resolve class representation questions from the pleadings" and deciding that some limited discovery is appropriate prior to considering class certification) (quoting *Int'l Woodworkers of America, AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1268 (4th Cir, 1981)); *Carver v. Velocity Express Corp.*, No. 1:07-CV-407, 2008 WL 1766629, at *2 (W.D.N.C. April 14, 2008) (finding "Rule 23 certification is typically addressed after the close of all discovery, with considerations going well beyond whether the plaintiffs and the putative class members are similarly situated" and allowing pre-class certification discovery).

### Legal Standard on Motions to Stay

Courts have discretion to stay proceedings as it is "incident[ ] to the power inherent in every court to control the disposition of the causes of its docket with economy of time and effort for itself, for counsel, and for litigants." *Hooker*, 2021 WL 10396902, at *2.

Federal Rule of Civil Procedure 23, which governs class certification, provides that a court must determine whether to issue a certification order "[a]t an early practicable time after a person sues ... as a class representative." Rule 23(c)(1)(A). However, the Court retains discretion to allow pre-certification discovery as part of its consideration of a motion for class certification. *Windham v. American Brands, Inc.,* 565 F.2d 59, 65 (4th Cir.1977) (en banc) (issues of class action manageability are properly committed to the

7

district court's discretion, because that court "generally has a greater familiarity and expertise" with the "practical ... and primarily ... factual" problems of administering a lawsuit "than does a court of appeals").

Local Rule 23.1 is right on point, as it speaks to the proper sequencing of discovery when a motion for class certification is contemplated. The local rule directs that the parties "should specifically address the class action determination as part of the Rule 16 conference and Rule 26(f) report." L.R. 23.1(b). Plaintiffs shall file a motion for class certification "[w]ithin 90 days after the entry of an initial pretrial order pursuant to the provisions of Fed.R.Civ.P. 16(b) and 26(f), unless this period is extended by court order …." *Id.* Moreover, the Local Rule allows the Court "[i]n ruling upon such a motion, the Court may allow the action to be so maintained, may disallow and strike the class action allegations, or may order postponement of the determination pending discovery or such other preliminary procedures as appear to be appropriate and necessary in the circumstances." *Id.*; *see also Hooker*, 2021 WL 10396902, at *1–2 (citing L.R. 23.1(b) and staying briefing on class certification).

## ARGUMENT

The Court should stay Plaintiffs' motion (Doc. 43) to allow Defendants to take important pre-certification discovery on the applicable Rule 23 requirements, specifically including the potential suitability of the four recently-added pseudonymous to be proper class representatives. Alternately, the Court could deny the motion with leave for Plaintiffs to re-file following the completion of this discovery.

A stay (or dismissal) is warranted for multiple independent reasons, including avoiding unfair prejudice to Defendants based on asymmetric access to case-critical facts, and judicial economy. A stay also would be consistent with Local Rule 23.1(b) and this Court's independent obligation to perform a "rigorous analysis" on class certification issues to ensure that all of the Rule 23 prerequisites have been satisfied. As shown below, even the limited record available now raises questions about the propriety of certifying the putative class proposed by Plaintiffs, and the suitability of the four proposed class representatives. Discovery should be afforded to fully and properly litigate these important issues. Finally, a stay pending discovery will not be prejudicial to Plaintiffs.

## I. The case is not pled as a class action at this time.

At the present time, this case is not a putative class action. The original complaint, filed April 18, 2024, does not include any class action allegations. (Doc. 1.) Just six weeks ago, Plaintiffs filed their Motion to Amend Complaint, along with a proposed First Amended Complaint. (Doc. 41, 41-1.) The proposed First Amended Complaint seeks to add four individual plaintiffs identified only by their initials, add certain class action allegations, and other changes. (*Id.*) The motion remains pending. Logically, of course, these events must take place in sequence before the class certification issues can be considered.

Moreover, even after the motion to amend is allowed, Plaintiffs will be required to serve the First Amended Complaint, and thereafter Defendants will be afforded the right to challenge the amended pleading by filing a motion to dismiss to present any and all

9

appropriate Rule 12 defenses. Fed. R. Civ. P 15(a)(3) and 12(b). In the interest of judicial efficiency, these threshold jurisdictional matters should be resolved as a preliminary matter, before the Court turns its attention to any Rule 23 issues. "[T]he vast majority of courts have held that dispositive motions may be considered prior to ruling on a motion for class certification." *Hooker*, 2021 WL 10396902, at \*1–2; *see also Player v. Maher Terminals, Inc.*, 841 F.2d 1123 (4th Cir. 1988) (table decision)). "Judicial economy is often best served by ruling on preliminary dispositive motions prior to considering class certification issues." *Id*. (quoting *Manuel v. Gembala*, No. 7:10-CV-4-FL, 2011 WL 3240493, at \*4 (E.D.N.C. July 27, 2011)); *see also* Local Rule 23.1(b) ("[T]he Court ... may order postponement of the determination [of a class action] pending discovery or such other preliminary procedures as appear to be appropriate and necessary in the circumstances").

## II. Defendants will suffer prejudice without pre-certification discovery.

Unless permitted to pursue pre-certification discovery, Defendants will suffer an unfair disadvantage and demonstrable prejudice in their effort to evaluate Plaintiffs' motion. Plaintiffs had the benefit of an unlimited period of time to prepare the motion and 110 pages of supporting papers. (Docs. 43, 43-1 through 43-16). On the current record, Plaintiffs' counsel alone knows the pertinent details about the four individuals proposed as class representatives and the respective guardian and next friends. This asymmetry prejudices Defendants, and discovery should be permitted.

## III. The current, limited factual record is not sufficient to justify class certification.

The burden is on Plaintiffs to "affirmatively demonstrate" that Rule 23(a) is satisfied. *Wal–Mart Stores,* 564 U.S. at 350; *see also* Local Rule 23.1(d). This Court must perform a rigorous analysis to ensure that Plaintiffs have satisfied all Rule 23 prerequisites. *EQT Prod. Co.,* 764 F.3d at 358.

Even on this asymmetrically-limited factual record, Plaintiffs' supporting submissions raise serious questions about the proposed class, and the suitability of the four proposed class representatives. Discovery should be pursued to fully and fairly develop the following Rule 23 issues.

### A. Whether Plaintiffs have defined a Class that is Ascertainable.

Plaintiffs bear the burden of carefully defining an ascertainable class. *Stafford v. Bojangles' Rests., Inc*, 123 F.4th 671, 680 (4th Cir. 2024) ("[C]lass definitions must be written with specificity," and a district court must not "craft[ ] overly general class definitions that run afoul of Rule 23's core tenets").

Plaintiffs propose a class defined as follows:

> All individuals with serious mental health and other cognitive disabilities charged with crimes who are or will be detained in North Carolina jails to await capacity evaluations or restoration services that the North Carolina Department of Health and Human Services ("NCDHHS") is statutorily required to provide.

(Doc. 43, at 2; Doc. 43-1, at 7-8.)

Defendants have serious concerns about this proposed definition.

11

### a. Problems with combining separate issues -- detainees waiting for evaluations, and detainees waiting to begin restoration services.

The Complaint identifies two different issues: (1) detainees currently on a wait list for a court-ordered capacity evaluation, and (2) detainees who have been adjudicated as incapable to proceed and are currently on a wait list for restoration service. (Doc. 1, ¶¶ 54-61; 62-70.) There are different causal factors and nationwide economic factors affecting these two separate groups. (Doc. 1, ¶¶ 52, 73-74; Doc. 20-1, ¶¶ 28-37.) Attempting to brush aside these case-critical differences in both causation and redressability, Plaintiffs propose a single class that combines the two distinct issues. But Plaintiffs have not demonstrated overlapping, common issues equally affecting these differently-situated groups, such that a single, combined class would be an appropriate way to litigate all of the distinct underlying issues.

Additionally, Plaintiffs' definition is so overly broad that the proposed class would even include detainees who are not currently on any wait list. As written, this definition would apply to individuals who have been detained but not been ordered to undergo a capacity evaluation. Here, for example, Plaintiff JJ was arrested and detained in Cabarrus County. However, at the time his legal guardian executed the affidavit, no State Court judge had ordered that JJ receive a capacity evaluation. He is not on any wait list. He does not have a court date until May 14, 2026. (Doc. 43-6, ¶¶ 45, 48.) Until there is a court

Case 1:24-cv-00335-WO-JGM   Document 47   Filed 04/20/26   Page 12 of 24

order for a capacity evaluation, there is no way to ascertain whether JJ would fall into the proposed class as defined by Plaintiffs.[1]

In other words, Plaintiffs' definition does not meet the Rule 23(a) "ascertainable" requirement because it is not tied in any way to a State Court order for an evaluation or restoration, and resulting wait time. There would be no way to identify this group of individuals.

### b. Problems with defining a single class based on combining distinct mental and cognitive conditions.

Another problem is that Plaintiffs' proposed definition references two distinct mental and cognitive conditions – "serious mental health and other cognitive disabilities…." (Doc. 43, at 2.) But Plaintiffs offer no legal or clinical definition of "serious mental health disability" or "other cognitive disability" used to discern class membership. These two categories are not precisely defined, and it is not ascertainable where or whether they may overlap. For example, where do individuals with substance use disorders fall? Further, because Plaintiffs failed to offer legal or clinical definitions of these terms, it is unclear whether a "mental illness" is being put forth as one type of cognitive disability in addition to "others." These terms do not define a class that is ascertainable.

---

[1] DHHS of course has no authority over how and when State Court judges and clerks schedule their hearings on capacity issues. This is one of the many external factors undermining Plaintiffs' theory that an injunction directed to Defendants alone can reduce waiting times for a court-ordered evaluation or waiting times to begin restoration services.

Second, Plaintiffs' proposed definition would include only individuals who have both "serious mental health and other cognitive disabilities," set forth in the conjunctive. However, from the affidavits provided, none of the proposed plaintiffs appear to have *both* a "severe mental health and other cognitive disability." One individual, JB, has a traumatic brain injury and secondary cognitive disability but no apparent diagnosis of a mental health condition. (Doc. 43-3, ¶¶ 5-6.) The other three individuals have mental health diagnoses but no apparent cognitive disabilities. (Doc. 43-4 through 43-6.) It appears, therefore, that none of the individual plaintiffs would even fall within the conjunctive class definition that Plaintiffs have proposed. Discovery should be afforded to gather additional information on the mental health and/or cognitive histories of these proposed class members to understand whether they fall within the definition Plaintiffs proposed.

### c. "Serious mental health and cognitive disability," capacity, and competence are distinct medical/legal conclusions, and cannot stand proxy for one another.

Nor have Plaintiffs made clear what nexus a "serious mental health and other cognitive disability, in their proposed definition, may have to a determination of "incapacity to proceed" pursuant to N.C.G.S. § 15A-1001(a). Plaintiffs are blending clinically and legally distinct concepts, which do not stand proxy for each other in courtroom proceedings. Mental health and other cognitive disabilities are generally determined in a clinical setting for the purpose of treatment. Capacity is determined by specially-trained forensic clinicians in the context of criminal justice proceedings in accordance with N.C.G.S.§ 15A. Competence is determined in civil special proceedings

14

in accordance with N.C.G.S. Chapter 35.  In short, based on the ambiguities inherent in the proposed definition, discovery should be allowed to determine whether Plaintiffs have proposed a class that is in any way ascertainable.

### B.  Whether Plaintiffs have established Commonality.

Plaintiffs' motion also raises disputed issues about commonality.  Certification is only appropriate if "there are questions of law or fact common to the class." Rule 23(a)(2). Commonality overlaps with Plaintiffs' burden to demonstrate typicality and predominance. *See* 1 Newberg on Class Actions §§ 3:25–3:27 (5th Ed. 2020) (hereinafter "Newberg") (noting overlap among these requirements).

Painting with a broad brush, Plaintiffs contend that common issues predominate "because all class members' claims derive from the prolonged wait times for capacity and/or restoration services."  (Doc. 43-1, at 2; *see also id*. at 14, "[t]he ITP process is the same for all detainees"). But Plaintiffs' conclusory assertions are undermined by evidence in the record.  The State does not have a monolithic, uniform "ITP system" for capacity evaluation, nor does it have a uniform system for restoration services.  In fact, the evidence shows there is "substantial variation in how criminal cases are referred and managed for individuals undergoing capacity to proceed evaluations and restoration services."  (Doc. 47-1, ¶ 6).

For example, as explained by Dr. Cochrane, the Statewide Director of Forensic Services for DHHS, there are significant variations affecting detainees awaiting court-ordered capacity determinations.  (Doc. 47-1, ¶¶ 7-13.)  These variations include:

15

<u>**Variations Affecting Detainees on Awaiting Capacity Evaluations**</u>

- **Differential Treatment of Misdemeanors and Felonies**

    When individuals are charged with a felony, courts have discretion whether to refer to a Local Certified Forensic Evaluator (LCFE) or evaluation at Central Regional Hospital (CRH). This discretion results in different referral patterns across jurisdictions.

- **Variability in Scheduling of Capacity Hearings**

    - Some counties diligently schedule initial hearings for incapacity to proceed (ITP) and follow-up hearings post-restoration, whereas others experience significant delays. Such delays prolong hospital stays for ITP defendants.

    - Notably, Pitt County is the only jurisdiction that operates a dedicated "capacity docket," consolidating all ITP evaluations and restoration hearings into a single monthly session.

- **Regional Disparities in Forensic Evaluator Availability**

    - Although each of North Carolina's four LME-MCOs contracts with Local Certified Forensic Evaluators (LCFEs) to conduct initial capacity assessments, rural counties typically experience scarcity in evaluator availability, leading to delays.

- **Variability in Evaluation Venue**

    - Capacity evaluations are conducted by different providers - LCFEs, Central Regional Hospital (CRH), or privately retained examiners - with varying turnaround times.

- **Submission of Court Orders for Evaluation**

    - In North Carolina, responsibility for submitting the court's order for a capacity evaluation varies by county. Depending on local practice, the order may be sent by the clerk of court, the county sheriff, or one of the attorneys involved in the case. There is no standardized process for how these submissions occur: some are sent electronically, while others are faxed or mailed. As a result, orders are often delayed, misdirected, or not submitted at all, which further slows the evaluation process.

    - This point is illustrated by the only named defendant in the Complaint: Devonte Watson (Doc 1, 33-34; Doc 41, 56-57). Mr. Watson was found incapable to

16

proceed and ordered to Broughton Hospital for treatment and capacity restoration on December 1, 2022. The Cleveland County Sheriff's Office did not provide a copy of that order to Broughton Hospital until July 18, 2023 - over a seven-month delay.

(Doc. 47-1, ¶¶ 7-13).

Dr. Cochrane also identifies separate variations that affect detainees who have been ordered to begin receiving restoration services. For example:

**Variations Affecting Detainees on Awaiting Restoration Services**

- **Treatment of Misdemeanors.**

  Defendants charged with misdemeanors who are found incapable to proceed are typically placed on the waitlist for hospital-based capacity restoration. However, such cases are frequently dismissed before or shortly after admission, as the elapsed time often equals the maximum sentence they would have received if convicted..

- **Implementation of Detention-Based Restoration Programs**

  - Pursuant to Session Law 2025-S616 (G.S. 122C-256), counties have the option -subject to local sheriff approval - to participate in Detention Center Capacity Restoration Programs (DCCRPs).

  - Currently, approximately 30 of North Carolina's 100 counties are participating in detention-based restoration programs, enabling expedited access to treatment and reducing reliance on state psychiatric hospital admissions.

- **Utilization of Community-Based Capacity Restoration Programs (CBCRPs)**

  Some counties with Community-Based Capacity Restoration Programs (CBCRPs) make active use of these services, while others do not. Directing eligible ITP defendants to CBCRPs helps them begin treatment sooner and frees up state hospital beds for individuals who require a higher level of care, allowing those admissions to occur more quickly.

- **Impact of Legal Guardianship**

  - A minority of ITP defendants have legally appointed guardians who can oversee treatment in detention settings, advocate for community-based restoration, and facilitate alternatives to hospitalization. The majority, however, lack this level of legal advocacy, potentially limiting access to timely and less restrictive

17

treatment options.

- **Involuntary Commitment and Violent Crimes**

  Not all defendants found Incapable to Proceed who require restoration can be ordered to a state psychiatric hospital. After an incapable finding, the court must determine whether reasonable grounds exist to believe the individual meets involuntary commitment criteria under Part 7 of Article 5, Chapter 122C of the General Statutes. Furthermore, if the defendant is charged with a violent crime, the court's order must require law enforcement to transport the individual to a 24-hour facility. In all other cases, the court must order that a locally designated clinician conduct an involuntary commitment evaluation. Only when an ITP defendant is found to meet involuntary commitment criteria can they then be admitted to a state psychiatric hospital for treatment and restoration.

(Doc. 47-1, ¶¶ 14-19).

Critically, these variations and inconsistencies affect the efficiency of providing evaluations and restoration services "in ways that are largely outside the control of DHHS." (*Id.* ¶ 6).

This evidence contradicts Plaintiffs' arguments on  the Rule 23(a) commonality requirement, and undermines the attempt to define a statewide class based on plaintiffs detained in only Pitt, Randolph, Gaston, and Cabarrus county jails.  (Doc. 43-3, ¶ 14; 43-4, ¶ 38; 43-5, ¶ 31; 43-6, ¶ 45). Pre-certification discovery should be allowed so the parties may further investigate the variability between these four counties, and between these counties as compared with the 96 other counties.

### C. Whether Plaintiffs can Establish Typicality.

The current record also suggests that the four individual Plaintiffs may not satisfy the typicality requirement.  "Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the

18

class and possess the same interest and suffer the same injury as the class members.' *Lienhart v. Dryvit Systems, Inc.,* 255 F.3d 138, 146 (4th Cir.2001) (quoting *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982)).  Plaintiffs argue that typicality is satisfied because each plaintiff "would bring the same claim and seek the same relief as the rest of the class."  (Doc. 43-1, at 3).

There are significant differences between the four individual plaintiffs that implicate typicality.  For example, as discussed above, Plaintiff JJ is detained in the Cabarrus County jail, but there is no evidence that a State Court judge has ordered a capacity evaluation. (Doc. 43-6, ¶ 45).  Therefore, to the extent that JJ has any claim at all, it would be different than the claim of a detainee currently on a wait list to receive a court-ordered evaluation, and different than a claim of a detainee on a wait list to receive restoration services.

In addition, only one of the individual plaintiffs, JJ, has a dually-appointed guardian under state law. (Doc. 43-6, ¶ 3).  In contrast, plaintiffs JB, DP and BW are not represented by guardians, but instead submitted affidavits from a parent acting as a "next friend," respectively.  (Doc. 43-3, ¶ 3; 43-4, ¶ 3; 43-5, ¶ 3).  This difference is significant.  First, it is not clear that "next friends" may assert claims on behalf of incompetent persons in this Court.  *See* Local Rule 17.1 ("Minors and incompetent persons may sue or defend only by their general or testamentary guardians within this state or by guardians ad litem appointed by this Court."); *Doe v. United States,* No. 1:17CV183, 2017 WL 11610523, at *1 (M.D.N.C. Sept. 12, 2017) ("Both North Carolina law and the Local Rules of this Court require that minors proceed through guardians ad litem").  Plaintiffs have not moved for

19

appointment of the next friends as guardians ad litem.  Second, a detainee who is not represented by legal guardian may have a different experience regarding opportunities and different timing for evaluation and service provision as compared to a detained with a guardian.  As Dr. Cochrane explained, "[a] *minority* of ITP defendants have legally appointed guardians who can oversee treatment in detention settings, advocate for community-based restoration, and facilitate alternatives to hospitalization.  The majority, however, lack this level of legal advocacy, potentially limiting access to timely and less restrictive treatment options."  (Doc. 47-1, ¶ 17) (emphasis added).

Plaintiff BW also appears to be atypical of the other three plaintiffs, and as compared to other detainees awaiting evaluations.  BW was "evaluated by the evaluator that B.W.'s attorney privately retained."  (Doc. 43-5, ¶¶ 25-28.)  BW's experience of hiring a private evaluator, and the timing relating to that private transaction, underscores why his experience is in no way typical of detainees who do not hire private evaluators.

Last, and as discussed above, the evidence shows there is great variability affecting evaluations and, separately, restorations.  (Doc. 47-1, ¶¶ 7-13, 14-19.) Plaintiffs have made no showing to rebut this evidence, nor have they demonstrated that these four plaintiffs are typical of putative class members detained in other counties.

### D.  Whether Plaintiffs can Establish Adequacy.

Disputed issues likewise arise in connection with the issue of adequacy, justifying discovery.  Representative parties and class counsel must "fairly and adequately protect the interests of the class."  Rule 23(a)(4).

Here, each of the affiants makes the bare assertion that she has no conflicts with other class members, and understands the need to act in the best interest of the class. (Doc. 43-3, ¶ 19; Doc. 43-4, ¶ 49, 43-5, ¶ 36, 43-6, ¶¶ 49-50). Defendants should be allowed to evaluate these assertions by taking discovery of each representatives' knowledge and understanding of these obligatory duties upon a class representative, including how the affiant can reconcile her familial and legal duty owed to her child as compared to the duties owed to unnamed, unknown putative class members.

### E. Whether Plaintiffs can establish a Rule 23(b)(2) class.

Plaintiffs also have the burden to demonstrate that their proposed class fits within at least one of the three types of classes outlined in Rule 23(b). *Krakauer*, 925 F.3d at 655. Here, Plaintiffs move to certify this matter as a class action pursuant to Rule 23(b)(2). (Doc. 43, at 2). Plaintiffs argue that Rule 23(b)(2) is satisfied because, they assert, Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." (Doc. 43-1, at 23). But this is both hotly disputed and contradicted by evidence in the record. *See supra* at Sec. III.B.

Plaintiffs' argument attempts to gloss over the Magistrate Judge's findings. (Doc. 33, at 50-51: "Considering the circumstances, the evidence demonstrates that there may be external factors contributing to the wait times and thereby interfering or perhaps hindering NCDHHS's statutory obligations."); *see also* Order (Doc. 44) (the Court adopted as modified therein the Recommendation). It also fails to account for evidence in the record

21

identifying the substantial variations across the State "that are largely outside the control of DHHS." (Doc. 47-1, ¶ 6.) Defendants should be afforded the opportunity to pursue discovery to support these defenses. *See Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 342 (4th Cir.1998) (holding that "when the defendants' affirmative defenses ... may depend on facts peculiar to each plaintiff's case, class certification is erroneous").

### F. No Prejudice to Plaintiffs if the Court Allows Pre-Certification Discovery.

In contrast to the clear prejudice that Defendants will incur without entry of a stay pending discovery, demonstrated above, Plaintiffs will not suffer any actual prejudice if a stay is entered while limited discovery is pursued. Plaintiffs have not articulated any valid basis for opposing Defendants' request for pre-certification discovery. Prior to filing this motion, undersigned counsel proposed a stay to allow for a limited period of discovery on class certification issues before Defendants responded substantively to the motion. Plaintiffs' counsel answered that Plaintiffs do not need or seek any discovery to support their motion. Plaintiffs' counsel did not agree that Defendants should be allowed to pursue limited discovery on class certification issues, even though Plaintiffs alone have access to the relevant biographical and chronological facts concerning the proposed class representatives. Plaintiffs' counsel stated only that they would prefer that their class certification motion be adjudicated early, even before the pleadings are closed. But that strategic litigation tactic should not block Defendants from taking necessary pre-certification discovery.

## Conclusion

For the reasons demonstrated above, Defendants respectfully request that the Court grant Defendants' motion to stay the motion for class certification, including the deadline for Defendants to respond to it, and the Court's consideration of it, until after Defendants pursue they discovery the need on these important Rule 23 issues. In the alternative, Defendants respectfully request that the Court deny the motion for class certification with leave to re-file following discovery.

Respectfully submitted this the 20th day of April 2026.

JEFF JACKSON
ATTORNEY GENERAL

/s/ Michael T. Wood
Michael T. Wood
Special Deputy Attorney General
N.C. State Bar No. 32427
Email: MWood@ncdoj.gov

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: 919-716-0186
Facsimile: 919-716-6758

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies pursuant to Local Rule 7.3(d)(1) that this document does not exceed 6,250 words.

JEFF JACKSON
ATTORNEY GENERAL

/s/ Michael T. Wood
Michael T. Wood
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day electronically filed the foregoing *DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY CONSIDERATION OF MOTION FOR CLASS CERTIFICATION* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record who have registered on the CM/ECF system.

Electronically submitted this the 20th day of April 2026.

/s/ Michael T. Wood
Michael T. Wood
Special Deputy Attorney General