IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DISABILITY RIGHTS NORTH CAROLINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-335-WO-JGM |
| | ) | |
| THE NORTH CAROLINA DEPARTMENT | ) | **DECLARATION OF ROBERT** |
| OF HEALTH AND HUMAN SERVICES and | ) | **COCHRANE, PSY.D., ABPP** |
| DEVDUTTA SANGVAI, in his official | ) | |
| capacity as Secretary of the North Carolina | ) | |
| Department Of Health And Human Services, | ) | |
| | ) | |
| Defendants. | ) | |

I, Robert Cochrane, Psy.D., ABPP, under penalty of perjury, state as follows:

1. I am over 18 years of age, legally competent to give this declaration, and have personal knowledge of the facts set forth in it.

2. I am employed as the Statewide Director of Forensic Services at the North Carolina Department of Health and Human Services (DHHS). I have served in this role since August of 2022.

3. After completing my undergraduate degree, I completed a masters degree in Clinical Psychology at Wheaton College and a doctoral degree in Clinical Psychology at Wright State University in 1999. I then completed a postdoctoral fellowship in Forensic Psychology at the University of Massachusetts Medical School. I have been licensed to practice psychology since 2000 and obtained board certification in forensic psychology from the American Board of Professional Psychology in 2004.

4. I have conducted psychological evaluations for federal and state courts for the past

25 years, including over 1,000 capacity to proceed assessments. I have testified in federal and state court on 164 occasions. Prior to my current position at DHHS, I served as the Behavioral Health training director for the North Carolina Department of Public Safety. Before that, I retired in 2020 after working 21 years for the Federal Bureau of Prisons, where I was the Internship Training Director and forensic psychologist at the Federal Correctional Complex in Butner, North Carolina.

5.     I have been actively involved in administrating, teaching, and supervising on clinical and forensic issues throughout my career and have served on numerous professional boards and organizations, including the past President of the American Academy of Forensic Psychology. In 2024 I was appointed by the Governor to serve on the North Carolina Psychology Board.

6.     Based on my review of statewide practices, I have identified substantial variation in how criminal cases are referred and managed for individuals undergoing capacity to proceed evaluations and restoration services. These inconsistencies affect the efficiency of service delivery in ways that are largely outside the control of DHHS.

**Variations Affecting Detainees on Awaiting Capacity Evaluations**

7.     **Differential Treatment of Misdemeanors and Felonies**

When individuals are charged with a felony, courts have discretion whether to refer to a Local Certified Forensic Evaluator (LCFE) or evaluation at Central Regional Hospital (CRH). This discretion results in different referral patterns across jurisdictions. Oftentimes CRH is utilized by courts when a more expedited evaluation could have been conducted by a local evaluator.

8.     **Variability in Scheduling of Capacity Hearings**

- Some counties diligently schedule initial hearings for incapacity to proceed (ITP) and follow-up hearings post-restoration, whereas others experience

2

significant delays. Such delays prolong hospital stays for ITP defendants.

- Notably, Pitt County is the only jurisdiction that operates a dedicated "capacity docket," consolidating all ITP evaluations and restoration hearings into a single monthly session. This structure expedites judicial review and facilitates more timely release decisions. Although efforts have been made to encourage other counties to adopt a similar model, no additional jurisdictions have done so.

9. **Regional Disparities in Forensic Evaluator Availability**

- Although each of North Carolina's four LME-MCOs contracts with Local Certified Forensic Evaluators (LCFEs) to conduct initial capacity assessments, rural counties typically experience scarcity in evaluator availability, leading to delays.

- DHHS cannot supersede the statutory authority of LME-MCOs to hire and retain local evaluators, nor can they resolve localized workforce shortages or ensure evaluator availability in underserved areas.

10. **Variability in Evaluation Venue**

- Capacity evaluations are conducted by different providers - LCFEs, Central Regional Hospital (CRH), or privately retained examiners - with varying turnaround times.

- Some counties rely primarily on CRH for initial evaluations, which introduces procedural delays relative to local evaluators. Some counties also routinely request multiple evaluations, including a "second opinion" at CRH following a local evaluation.

11. **Resource-Driven Referral Disparities**

3

- Counties possessing specialized resources - such as mental health courts or diversion programs - can divert eligible individuals away from formal capacity restoration processes altogether.

- Jurisdictions lacking such infrastructure inevitably default more cases to the formal ITP pathway, increasing demand on evaluation and restoration capacities.

12. **Submission of Court Orders for Evaluation**

- In North Carolina, responsibility for submitting the court's order for a capacity evaluation varies by county. Depending on local practice, the order may be sent by the clerk of court, the county sheriff, or one of the attorneys involved in the case. There is no standardized process for how these submissions occur: some are sent electronically, while others are faxed or mailed. As a result, orders are often delayed, misdirected, or not submitted at all, which further slows the evaluation process.

- This point is illustrated by the only named defendant in Plaintiff's Complaint: Devonte Watson (Doc 1, 33-34; Doc 41, 56-57). Mr. Watson was found incapable to proceed and ordered to Broughton Hospital for treatment and capacity restoration on December 1, 2022. The Cleveland County Sheriff's Office did not provide a copy of that order to Broughton Hospital until July 18, 2023 - over a seven-month delay.

13. **Jail Mental Health Services**

There is substantial variability in access to mental health services across detention centers. Many facilities rely on contracted providers and telepsychiatry, while

4

others offer only basic services such as crisis intervention. In counties with higher-quality care, defendants may never require a capacity evaluation, and individuals previously restored at a state hospital are far less likely to decompensate and need another evaluation or additional restoration treatment.

**Variations Affecting Detainees on Awaiting Restoration Services**

14. **Treatment of Misdemeanors**

Defendants charged with misdemeanors who are found incapable to proceed are typically placed on the waitlist for hospital-based capacity restoration. However, such cases are frequently dismissed before or shortly after admission, as the elapsed time often equals the maximum sentence they would have received if convicted. This results in restoration efforts that are procedurally required but functionally unnecessary.

15. **Implementation of Detention-Based Restoration Programs**

- Pursuant to Session Law 2025-S616 (G.S. 122C-256), counties have the option -subject to local sheriff approval - to participate in Detention Center Capacity Restoration Programs (DCCRPs). Despite active promotion by DHHS, participation remains voluntary.

- Currently, approximately 30 of North Carolina's 100 counties are participating in detention-based restoration programs, enabling expedited access to treatment and reducing reliance on state psychiatric hospital admissions.

16. **Utilization of Community-Based Capacity Restoration Programs (CBCRPs)**

Some counties with Community-Based Capacity Restoration Programs (CBCRPs) make active use of these services, while others do not. Directing eligible ITP

5

defendants to CBCRPs helps them begin treatment sooner and frees up state hospital beds for individuals who require a higher level of care, allowing those admissions to occur more quickly. The decision to use CBCRP's are ultimately at each court's discretion.

17. **Impact of Legal Guardianship**

- A minority of ITP defendants have legally appointed guardians who can oversee treatment in detention settings, advocate for community-based restoration, and facilitate alternatives to hospitalization.

- The majority, however, lack this level of legal advocacy, potentially limiting access to timely and less restrictive treatment options.

18. **Placement in Central Prison Safekeeping**

- A limited number of ITP defendants are ordered to Central Prison Safekeeping (G.S. 162-39) when local detention facilities are unable to safely manage their behavior or the required medical-psychiatric care.

- Unlike county jails, Central Prison Safekeeping permits treatment over objection, facilitating behavioral stabilization and subsequent restoration or transfer to a state hospital.

19. **Involuntary Commitment and Violent Crimes**

Not all defendants found Incapable to Proceed who require restoration can be ordered to a state psychiatric hospital. After an incapable finding, the court must determine whether reasonable grounds exist to believe the individual meets involuntary commitment criteria under Part 7 of Article 5, Chapter 122C of the General Statutes. Furthermore, if the defendant is charged with a violent crime, the

6

court's order must require law enforcement to transport the individual to a 24-hour facility. In all other cases, the court must order that a locally designated clinician conduct an involuntary commitment evaluation. Only when an ITP defendant is found to meet involuntary commitment criteria can they then be admitted to a state psychiatric hospital for treatment and restoration.

I affirm, under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing representations are true to the best of my knowledge, information and belief.

Dated this the _20th__ day of April 2026.

DocuSigned by:

E9F00B7805044BA...

Robert Cochrane, Psy.D., ABPP
Statewide Director of Forensic Services
North Carolina Department of
Health and Human Services

7